OPINION OF THE COURT
Per Curiam.
The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated May 3, 2011, containing three charges of professional misconduct. Following a hearing, the Special Referee sustained charge one, but declined to sustain charges two and three. The Grievance Committee now moves to confirm in part, and disaffirm in part, the Special Referee’s report, and to impose such discipline as this Court deems appropriate. The respondent, by his attorney, moves to confirm in part, and disaffirm in part, the Special Referee’s report. He urges that all charges be rejected, and that no discipline be imposed. We find that the Special Referee properly sustained charge one and that she properly declined to sustain charge three. However, we find that the Special Referee improperly declined to sustain charge two, and that charge two should have been sustained based upon the evidence adduced.
Charge one, as amended, alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation, and conduct adversely reflecting on his fitness as a lawyer, by aiding and abetting a client in deceiving a lender at a real estate closing by withholding material information from the lender, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]), as follows:
On or before December 16, 2008, Amarbin Ahmed retained the respondent to represent him and his company, Bluenur, Inc. (hereinafter Bluenur), in connection with the purchase of an investment property located in the Bronx (hereinafter the premises) from Gladys Carter. At that time, Carter was facing loss of the premises through foreclosure.
When Ahmed first met the respondent, Ahmed was already in possession of a contract of sale, which provided for a sale price *193 of $385,000, a down payment of $25,000, and a balance of $360,000 due to Carter at closing. However, at the time the respondent was retained, Ahmed had not yet delivered the down payment of $25,000 to Carter or her attorney. Nonetheless, Ahmed had already secured a commitment for a loan of $345,000 from a private money lender, Thomas Gubitosi, in Gubitosi’s capacity as trustee of a trust entitled Thomas Gubitosi TTEE Marie Holdings, Inc., RET PSB FBO Thomas Gubitosi. The $345,000 loan was to be secured by a first mortgage on the premises (hereinafter the first mortgage).
In addition to the first mortgage, Ahmed had also secured a commitment from Gubitosi for a line of credit (hereinafter the construction line of credit) for up to an additional $90,000, to be available to Ahmed and Bluenur following the closing, for construction and renovations at the premises in connection with Bluenur’s proposed sale to a third party. The construction line of credit also was to be secured by a mortgage on the premises.
The closing on the transaction was scheduled for December 16, 2008, at the offices of Gubitosi’s attorneys in Farmingdale. Prior thereto, it was calculated that the balance due, out of pocket, from Ahmed and Bluenur to Carter at the closing, net of the first mortgage proceeds, would be $46,642 (hereinafter the balance due). The balance due comprised the $25,000 down payment, which still had not been delivered, plus an additional $21,642.
On or about December 16, 2008, the respondent accompanied Ahmed to the closing. However, Ahmed did not bring sufficient funds to cover the balance due. Rather, the respondent brought with him to the closing a Chase Bank official check in the amount of $21,642, payable to Carter. The remitter listed on the bank check was Lisa Kernahan, an owner or employee of Central Abstract, a title company. At all relevant times, the respondent was an owner of, or had an equitable interest in, Central Abstract, whose offices were located upstairs from the respondent’s law office.
The $21,642 check was intended by the respondent to be either (1) a loan to Ahmed, for the purpose of assisting him in paying the balance due to Carter at the closing, or (2) the respondent’s own investment in the premises. On or about December 16, 2008, the respondent produced the $21,642 check and showed it to the other parties at the closing, including Gubitosi’s attorney. At some point during the closing, the respondent retook possession and control of the $21,642 check.
*194 During the closing, the respondent and Ahmed met with Carter and her attorney outside of the presence of Gubitosi’s attorney. In the course of that meeting, the respondent prepared a handwritten note stating:
“Learie R. Wilson, an attorney duly admitted to practice before the courts of New York, personally guarantee [sic] that I will deliver [$21,642] from the proceeds of the second mortgage of [$90,000] to Gladys Carter . . .
“Amarbin Ahmed will deliver [$25,000] to Gladys Carter from the proceeds of the second mortgage of $90,000.”
The respondent and Ahmed executed the handwritten note and delivered it to Carter, in lieu of paying the balance due at the closing. Gubitosi’s attorney was not advised at the closing that Ahmed had failed to deliver the $25,000 down payment or pay the balance due. Moreover, Gubitosi’s attorney also was not advised at the closing that the respondent had failed to deliver the $21,642 check to Carter, or that the respondent and Ahmed had signed and delivered a handwritten note to Carter promising to draw checks against the construction line of credit to pay Carter the balance due, after the closing. Finally, Gubitosi’s attorney was not advised at the closing that Ahmed had failed to contribute any of his own funds toward the purchase of the premises.
At the closing, Ahmed, on behalf of himself and as president of Bluenur, executed a $345,000 balloon note and a mortgage, and delivered it to Gubitosi’s attorney, in connection with the first mortgage. Ahmed, on behalf of himself and as president of Bluenur, also executed a $90,000 mortgage and an equity credit line agreement and disclosure statement, and delivered it to Gubitosi’s attorney, in connection with the construction line of credit.
Paragraph “N” of the equity credit line agreement and disclosure statement stated: *195 At the closing, Gubitosi’s attorney disbursed the proceeds of the first mortgage in accordance with the requirements of the transaction. The evidence showed that, had Gubitosi or his attorney been advised that Ahmed had never delivered the $25,000 down payment or the balance due to Carter, or that Ahmed had never delivered the $21,642 check to Carter, or that Ahmed intended to draw against the construction line of credit to pay the balance due, or that Ahmed had not contributed any of his own funds toward the purchase of the premises, they would not have agreed to finance the transaction or disburse the proceeds of the first mortgage.
*194 “The funding of this loan by [Gubitosi] is strictly conditioned upon [Ahmed] delivering to [Gubitosi] a contract of sale between [Bluenur] and Mahammed Alam of . . . Kissena Blvd., Flushing, NY 11355. The contract must provide for a down payment of 10% of the purchase price on contract and the contract must contain no mortgage contingency *195 language. As the contract has not been provided to [Gubitosi] prior to closing, [Gubitosi] reserves the right to impose additional conditions prior to funding if [he] so elects.”
At the closing, Carter executed and delivered a deed conveying title to the premises to Bluenur. At the conclusion of the closing, the respondent counseled and permitted Ahmed to execute a HUD-1 settlement statement, which the respondent knew was false in that it stated, among other things, that a $25,000 down payment had been made in connection with the transaction when, in fact, it had not been made. The respondent left the closing in possession of the $21,642 check.
Following the closing, Gubitosi refused to permit Ahmed to draw against the construction line of credit without submitting legitimate and proper construction invoices and/or the contract of sale required by item “N” of the equity credit line agreement and disclosure statement. The respondent and Ahmed failed to pay to Carter any of the balance due and defaulted on the first mortgage.
Charge two alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, prejudicial to the administration of justice, and adversely reflecting on his fitness as a lawyer, by exercising a lack of candor with the Grievance Committee during its investigation of allegations of professional misconduct against him, in violation of former Code of Professional Responsibility DR 1-102 (a) (4), (5) and (7) (22 NYCRR 1200.3 [a] [4], [5], [7]), as follows:
On October 14, 2010, the respondent appeared at the offices of the Grievance Committee to be examined under oath in connection with the Grievance Committee’s investigation of a complaint filed by Gubitosi. At the respondent’s examination under oath, he falsely testified that Ahmed had, in fact, *196 delivered the $25,000 down payment to Carter, when the respondent knew or should have known that no down payment had been delivered in the transaction. The respondent also falsely testified that the balance due was withheld from Carter at the closing as a result of Carter’s eleventh-hour demand that she be permitted to remain in the premises following the closing, for six months, rent free. The respondent knew or should have known that Carter remained in the premises following the closing due to his and Ahmed’s failure to pay her the balance due at or following the closing, as required by the respondent’s own handwritten note promising delivery of the funds.
Based upon the evidence adduced, including the respondent’s admissions, we find that the Special Referee properly sustained charge one. We further find that the Special Referee properly declined to sustain charge three, since the Grievance Committee failed to establish that the respondent engaged in the improper conduct alleged in that charge. However, we find that charge two should have been sustained, since the Grievance Committee established that the respondent exercised a lack of candor by engaging in the conduct described above. The Grievance Committee’s motion to confirm in part, and disaffirm in part, the Special Referee’s report, is granted to the extent that charges one and two are sustained, and denied to the extent that charge three is not sustained. The respondent’s motion to confirm in part, and disaffirm in part, the Special Referee’s report, is granted to the extent that charge three is not sustained, and denied to the extent that charges one and two are sustained.
In determining an appropriate measure of discipline to impose, this Court has considered six character letters/affidavits offered by the respondent. This Court has also considered the respondent’s prior disciplinary history, which includes an admonition and an admonition, personally delivered.
Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of one year.
Eng, P.J., Mastro, Rivera, Skelos and Dillon, JJ., concur.
Ordered that the petitioner’s motion to confirm in part, and disaffirm in part, the Special Referee’s report, is granted to the extent that charges one and two are sustained, and denied to the extent that charge three is not sustained; and it is further,
Ordered that the respondent’s motion to confirm in part, and disaffirm in part, the Special Referee’s report, is granted to the *197 extent that charge three is not sustained, and denied to the extent that charges one and two are sustained; and it is further,
Ordered that the respondent, Learie Richard Wilson, is suspended from, the practice of law for a period of one year, commencing November 1, 2013, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than May 1, 2014. In such application, the respondent shall furnish satisfactory proof that during said period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (3), and (4) otherwise properly conducted himself; and it is further,
Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Learie Richard Wilson, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Learie Richard Wilson, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).